UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LACINO HAMILTON,

      Plaintiff,                            Civil Action No. _____

v.

JAMES FLEMING, in his individual
capacity,
RUTH CARTER, in her individual
capacity, and
COUNTY OF WAYNE, MICHIGAN,

      Defendants.

## **COMPLAINT AND JURY DEMAND**

      Plaintiff Lacino Hamilton, by and through his attorneys, The Googasian Firm, P.C., alleges as follows:

### **Nature of Action**

      1.     This civil rights action brought pursuant to 42 U.S.C. §1983 and 1988 and the Fourth and Fourteenth Amendments to the United States Constitution arises from Plaintiff Lacino Hamilton's wrongful arrest, conviction, and incarceration due to the unconstitutional acts of the defendants.

2.     As a result of the unconstitutional acts of the defendants, Plaintiff Lacino Hamilton ("Mr. Hamilton") spent more than 26 years wrongfully incarcerated for a murder that he did not commit.

3.     On September 30, 2020, acting on a motion filed by the Wayne County Prosecutor's Conviction Integrity Unit, a Wayne County Circuit Court judge dismissed the charges against Mr. Hamilton and vacated his convictions relating to a 1994 murder in Detroit.

4.     Mr. Hamilton is now listed on the National Registry of Exonerations, a project run in part by University of Michigan Law School and Michigan State University College of Law.

5.     Tragically, Mr. Hamilton, now 47, spent more than half of his life incarcerated due to the unconstitutional acts of defendants, who utilized a serial jailhouse snitch to secure a conviction of Mr. Hamilton through fabrication of evidence and who withheld exculpatory information regarding a jailhouse snitch scheme used by and known to police and prosecutors to secure wrongful convictions.

## **Jurisdiction and Venue**

6.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1343(3) and 1343(4).

7.     Venue is proper under 28 U.S.C. § 1391.

## Parties

8.      Mr. Hamilton is a citizen of the United States who at all relevant times resided in the state of Michigan.

9.      At all relevant times, Defendant James Fleming ("Defendant Fleming") was a resident in the state of Michigan and an employee of the Detroit Police Department, where he worked as an investigator or detective.

10.      At all relevant times, Defendant Ruth Carter ("Defendant Carter") was a resident in the state of Michigan and an employee of the Wayne County Prosecutor's Office, where she worked as an assistant prosecutor.

11.      At all relevant times, Defendant County of Wayne, Michigan ("Defendant Wayne County"), has been a body corporate created under the Michigan Constitution with departments that include the Wayne County Prosecutor's Office.

## Factual Allegations

### Murder of Willa Bias

12.      On or about Sunday, June 26, 1994, Willa Bias, 54, was murdered in her home at 12005 East Seven Mile Road in Detroit.

13.      On the morning of Tuesday, June 28, 1994, responding to a call from a neighbor of Ms. Bias about not having heard from Ms. Bias, members of the Detroit

3

Police Department discovered Ms. Bias's body in her kitchen with multiple gunshot wounds.

14.    For many years, Ms. Bias had served as a foster parent. Lacino Hamilton became a foster child of Ms. Bias when he was approximately four, and he lived with her for many years thereafter.

15.    In 1994, although Mr. Hamilton had not lived with Ms. Bias for a number of years, he continued to stay in touch with her and always considered her to be his mother.

16.    In or around 1994, Mr. Hamilton earned his General Equivalency Diploma.

17.    Ms. Bias also had a biological son, Gary Woods, whom she raised and who had moved to Kansas City after graduating from college in the 1980s.

18.    Mr. Woods would call his mother on Sundays, and he apparently was not able to reach his mother as usual on Sunday, June 26, 1994, or the following day.

19.    As a result, Mr. Woods called one of Ms. Bias's neighbors about his inability to reach his mom, which led to the call to police and the discovery of Ms. Bias's body in her kitchen.

20.    On July 28, 1994, after Ms. Bias's body was discovered, Detroit police took photographs and collected fingerprints and other evidence from her home.

21.     Among the evidence collected were fingernail scapings from Ms. Bias that tested positive for blood, indicating that she had been involved in a struggle with her assailant.

22.     As part of the ensuing police investigation, no DNA or other testing was performed on the blood.

23.     No physical evidence collected from Ms. Bias's home or body ever linked Mr. Hamilton to the crime.

24.     No physical evidence of any kind linked Mr. Hamilton to the crime.

25.     At the time of Ms. Bias's murder, Mr. Hamilton had a criminal history, but he had no history of any crime relating to Ms. Bias whom he loved.

26.     As the murder investigation of Ms. Bias began, one or more officers in the Detroit Police Department decided that Mr. Hamilton should be a suspect in her murder despite the absence of any physical evidence linking him to the crime.

**Police And Prosecutor Use of Oliver Cowan and Others in a Snitch Scheme**

27.     At the time that Ms. Bias's murder was being investigated in late June 1994, Detroit Police detectives, including Defendant Fleming, with the aid of Wayne County Prosecutors, including Defendant Carter and others, operated a snitch scheme ("the Snitch Scheme") in the intake or holding area on the 9th floor of Detroit Police Headquarters ("9th Floor Intake").

5

28.     In the Snitch Scheme, criminals serving as snitches were housed for periods of months in 9th Floor Intake, which typically is used only to hold criminal suspects in intake pending arraignment or interrogation for a matter of hours or days.

29.     Criminal suspects charged with crimes and not released on bond are typically held in Wayne County Jail pending trial.

30.     Criminals sentenced to jail time of one year or less are typically held in Wayne County Jail.

31.     But criminals participating in the Snitch Scheme were kept in 9th Floor Intake for months at a time, where they enjoyed special considerations and benefits that they would not have received if they had been incarcerated in Wayne County Jail.

32.     In the Snitch Scheme, Defendant Fleming and others in the Detroit Police Department used a group of criminals being housed in 9th Floor Intake to fabricate evidence against suspects in murder cases that Defendant Fleming and others were seeking to close.

33.     In the Snitch Scheme, Defendant Fleming and others in the Detroit Police Department repeatedly used the same criminals being housed in 9th Floor Intake to claim falsely that suspects had confessed crimes to them while being held there, with Defendant Fleming and others supplying these snitches with the information needed to fabricate purported evidence of confessions.

34.     In the Snitch Scheme, one of the criminals repeatedly used by Defendant Fleming and others in the Detroit Police Department was a convicted felon named Oliver Cowan.

35.     Mr. Cowan, who also used many aliases, had an extensive criminal history, including an October 1993 charge of breaking and entering into an occupied dwelling for which he was facing the potential of a substantially enhanced prison sentence as a habitual offender.

36.     Mr. Cowan entered a guilty plea to the breaking and entering charges on or about April 1994, but he continued to be housed in 9th Floor Intake, rather than Wayne County Jail, due to his usefulness to detectives such as Defendant Fleming in the Snitch Scheme.

37.     As of June 28, 1994, when the murder investigation of Ms. Bias began, Mr. Cowan had been held in 9th Floor Intake for at least six months, rather than Wayne County Jail, because he was continuing to assist detectives in the Detroit Police Department to close cases as a jailhouse snitch in the Snitch Scheme.

38.     In addition to Mr. Cowan, Detroit Police detectives sought participation in the Snitch Scheme from criminals including Joe Twilley, Jonathan Hewitt-El, and Edward Allen.

39.     Prior to being enlisted by Defendant Fleming to testify falsely against Mr. Hamilton beginning in July 1994 to implicate Mr. Hamilton in Ms. Bias's

murder, Mr. Cowan had been used by at least three different homicide squads within the Detroit Police Department to incarcerate at least six people for murders through testimony as a jailhouse snitch.

40.     Upon information and belief, Mr. Cowan, Mr. Twilley, Mr. Hewitt-El, Mr. Allen and others were used by Detroit police detectives in the Snitch Scheme in dozens of cases to provide fabricated testimony about jailhouse confessions by suspects who were being held in 9th Floor Intake.

41.     Upon information and belief, Mr. Cowan, Mr. Twilley, Mr. Hewitt-El, Mr. Allen and others participating in the Snitch Scheme were kept in 9th Floor Intake for months at a time where they enjoyed special considerations and benefits that they would not have received if they had been incarcerated in Wayne County Jail, where they supposed to be held.

### Defendant Carter's Involvement in Mr. Cowan's Ongoing Role In the Snitch Scheme

42.     On or about July 8, 1994, Defendant Carter took steps to allow for, and keep secret, Mr. Cowan's ongoing use in the Snitch Scheme.

43.     Defendant Carter took steps to allow for Mr. Cowan's ongoing use in the Snitch Scheme in an investigative or administrative capacity prior to the invocation of any judicial process against Mr. Hamilton relating to the death of Ms. Bias.

8

44.    Defendant Carter took steps to allow for Mr. Cowan's ongoing use in the Snitch Scheme prior to receiving any assignment relating to the prosecution of Mr. Hamilton.

45.    On July 8, 1994, Mr. Cowan was scheduled for sentencing on his breaking and entering charge to which he had plead guilty in April 1994.

46.    Defendant Carter attended the sentencing proceedings relating to Mr. Cowan before Judge Michael Sapala in Detroit Recorder's Court on July 8, 1994.

47.    Defendant Carter participated in an off-the-record sidebar with the judge and Mr. Cowan's defense attorney at the time of Mr. Cowan's sentencing.

48.    As a result of Defendant Carter's sidebar discussion, the judge moved sentencing of Mr. Cowan *in camera* into the Court's jury room "away from the prying eyes of the public," as described in a transcript of the ensuing sentencing.

49.    As a result of Defendant Carter's sidebar discussion, Mr. Cowan's participation in the Snitch Scheme was kept out of the public eye and record.

50.    As a result of Defendant Carter's sidebar discussion, no public proceeding occurred in which Mr. Cowan's ongoing role as a snitch in homicide cases being closed by Detroit police detectives and Wayne County prosecutors was publicly disclosed.

51.    Upon information and belief, Defendant Carter was not the prosecutor assigned to Mr. Cowan's criminal case, but nonetheless participated in the

9

sentencing in an effort to prevent disclosure of Mr. Cowan's ongoing role in the Snitch Scheme.

52.    Upon information and belief, Defendant Carter knew that Mr. Cowan had been held for multiple months in 9th Floor Intake.

53.    Upon information and belief, Defendant Carter knew that Mr. Cowan had assisted at least three Detroit police homicide squads in investigations and in the incarceration of at least six people through his role as a jailhouse snitch.

54.    Upon information and belief, Defendant Carter knew that public disclosure of Mr. Cowan's ongoing role as a jailhouse snitch in multiple cases could lead to discovery of his fabrication of evidence in those and other cases.

55.    Upon information and belief, Defendant Carter knew that, as a condition of his favorable treatment at sentencing, Mr. Cowan was expected to continue to cooperate in additional investigations with further testimony.

56.    As a reward for his involvement with Detroit police detectives in implicating multiple suspects as a jailhouse snitch in multiple homicides and to enable him to continue to aid Detroit police detectives in their investigations, Mr. Cowan was sentenced on July 8, 1994, to one year in Wayne County Jail and dismissal of his habitual offender charge.

57.    After his sentencing on July 8, 1994, Mr. Cowan was not, in fact, transferred to Wayne County Jail to serve his one-year sentence, but rather was taken

back to 9th Floor Intake, where he was used by Detroit Police detectives to continue to participate in the Snitch Scheme, including to implicate Mr. Hamilton through false and fabricated evidence in Ms. Bias's murder through a purported confession.

### Mr. Hamilton's Arrest on July 8, 1994

58.     On the afternoon of July 8, 1994, the same day as the secret sentencing of Mr. Cowan in which Defendant Carter had been involved, Mr. Hamilton was arrested by Detroit police and brought to Detroit Police Headquarters and placed in 9th Floor Intake.

### Defendant Fleming's Use of Mr. Cowan to Fabricate Evidence Against Mr. Hamilton on July 9, 1994

59.     Mr. Cowan was returned to 9th Floor Intake after his sentencing on July 8, 1994, even though his sentence called for him to be held in Wayne County Jail for 12 months.

60.     Upon his return to 9th Floor Intake after his sentencing, Mr. Cowan had no contact or communication with Mr. Hamilton there or anywhere else.

61.     On the morning of July 9, 1994, at approximately 8:45 a.m., Defendant Fleming took Mr. Hamilton from 9th Floor Intake to an interrogation room at Detroit Police Headquarters, but neither Defendant Fleming nor anyone else interrogated Mr. Hamilton there or anywhere else.

62.     Defendant Fleming returned Mr. Hamilton to 9th Floor Intake at approximately 2:55 p.m. on July 9, 1994.

63.     Also on the morning of July 9, 1994, Defendant Fleming approached Mr. Cowan in 9th Floor Intake about helping him with the case against Mr. Hamilton.

64.     Defendant Fleming wrote a statement bearing the date July 9, 1994, at 9:15 a.m. and signed by Mr. Cowan at 10:00 a.m. in which Mr. Cowan purported to recount a confession that Mr. Hamilton had made to him on July 8, 1994, about Ms. Bias's murder, after Mr. Hamilton's arrival in 9th Floor Intake following his arrest that day.

65.     The statement written by Defendant Fleming and signed by Mr. Cowan was fabricated and utterly false.

66.     Defendant Fleming knew that he was fabricating false evidence against Mr. Hamilton when he wrote the statement that Mr. Cowan signed.

67.     Defendant Fleming knew that Mr. Cowan was a serial jailhouse informant and a participant in a Snitch Scheme operated by Defendant Fleming and others in the Detroit Police Department and Defendant Wayne County to close murder cases with fabricated and false testimony.

68.     Upon information and belief, Defendant Fleming approached Mr. Cowan about signing the fabricated and false statement in 9th Floor Intake during the time when Defendant Fleming had removed Mr. Hamilton from 9th Floor Intake and placed him in an interrogation room.

12

69.     Defendant Fleming's false and fabricated statement signed by Mr. Cowan preposterously stated in part that Mr. Hamilton, on the afternoon of his arrival at 9th Floor Intake the day before, had confessed that he had "smoked" Ms. Bias "about 7-10 days ago."

70.     Upon information and belief, Defendant Fleming disclosed to one or more other officers in the Detroit Police Department that he was using Mr. Cowan to implicate Mr. Hamilton in the murder of Ms. Bias.  Upon information and belief, the identity of other officers in the Detroit Police Department who were aware of Defendant Fleming's fabrication of a purported confession made to Mr. Cowan by Mr. Hamilton will be revealed in discovery in this action.

71.     On July 9, 1994, the day that Defendant Fleming fabricated the purported confession made to Mr. Cowan by Mr. Hamilton, colleagues of Defendant Fleming in a homicide squad of the Detroit Police Department sought murder charges against Mr. Hamilton in the death of Ms. Bias.

72.     As a result of Defendant Fleming's fabrication of evidence with the use of Mr. Cowan in the Snitch Scheme, the wrongful arrest, prosecution, and conviction of Mr. Hamilton was set in motion.

73.     On or about July 10, 1994, one day after Defendant Fleming's fabrication of the purported confession, the Wayne County Prosecutor's office

authorized a warrant for the arrest of Mr. Hamilton on murder and firearm charges relating to the death of Ms. Bias.

**Defendant Carter's Assignment as Prosecutor in Mr. Hamilton's Case
And Failure to Disclose Her Prior Involvement and Knowledge
of Mr. Cowan's Sentencing in the Snitch Scheme**

74.     At a later point after the arrest of Mr. Hamilton on the murder charge relating to the death of Ms. Bias, Defendant Carter was assigned to prosecute the case against Mr. Hamilton.

75.     Prior to being assigned to prosecute the case against Mr. Hamilton, Defendant Carter knew that she had taken steps to allow for Mr. Cowan's continued involvement in the Snitch Scheme, including with regard to Mr. Cowan's secret sentencing on July 8, 1994.

76.     Prior to being assigned to prosecute Mr. Hamilton, Defendant Carter knew that Mr. Cowan had been sentenced in secret to one year in Wayne County Jail on July 8, 1994, and that Mr. Cowan did not belong in 9th Floor Intake on the following day of July 9, 1994, when he was purporting that Mr. Hamilton had confessed to him.

77.     Prior to being assigned to prosecute Mr. Hamilton, Defendant Carter knew that Mr. Cowan had been transferred back to 9th Floor Intake on July 8, 1994, rather than Wayne County Jail, due to his continuing participation in the Snitch Scheme.

78.     Prior to being assigned to prosecute Mr. Hamilton, Defendant Carter knew that Mr. Cowan's involvement in the Snitch Scheme had been expanded within a day of his secret sentencing on July 8, 1994, to implicate Mr. Hamilton in Ms. Bias's murder through a purported confession written by Defendant Fleming.

79.     After being assigned to prosecute Mr. Hamilton for the murder of Ms. Bias, Defendant Carter never disclosed to Mr. Hamilton or his defense counsel her own prior knowledge of and involvement with Mr. Cowan's participation in the Snitch Scheme.

80.     After being assigned to prosecute Mr. Hamilton for the murder of Ms. Bias, Defendant Carter never disclosed to Mr. Hamilton or his defense counsel her own prior knowledge that Mr. Cowan had been previously used in investigations by at least three different homicide squads within the Detroit Police Department to, with the involvement of Defendant Wayne County, incarcerate at least six people for murders through testimony as a jailhouse snitch.

81.     After being assigned to prosecute Mr. Hamilton for the murder of Ms. Bias, Defendant Carter never disclosed to Mr. Hamilton or his defense counsel her own prior involvement in arranging for Mr. Cowan to be sentenced *in camera* to one year in Wayne County Jail on July 8, 1994, due to his participation in the Snitch Scheme.

15

82.    After being assigned to prosecute Mr. Hamilton for the murder of Ms. Bias, Defendant Carter never disclosed to Mr. Hamilton or his defense counsel her own prior knowledge about Mr. Cowan's continued participation in the Snitch Scheme, including, but not limited to, her knowledge that Mr. Cowan had been brought back on July 8, 1994, to 9th Floor Intake, rather than Wayne County Jail, as required by the secret sentencing in which she had participated.

83.    After being assigned to prosecute Mr. Hamilton for the murder of Ms. Bias, Defendant Carter never disclosed to Mr. Hamilton or his defense counsel her own prior knowledge that at the time that Mr. Cowan was purported to have received a purported confession from Mr. Hamilton, Mr. Cowan was supposed to be serving a one-year sentence in Wayne County Jail.

**Mr. Cowan's False Testimony at Mr. Hamilton's Preliminary Exam**

84.    At a preliminary examination on July 29, 1994, Mr. Cowan provided false and fabricated testimony about Mr. Hamilton's purported confession that had been drafted by Defendant Fleming.

85.    Defendant Fleming also testified falsely at the preliminary exam.

86.    During the preliminary examination, Mr. Cowan falsely testified that he had been a jailhouse witness in cases involving only "two or three" other people.

87.    Defendants Carter and Fleming knew, but did not disclose, that Mr. Cowan's testimony was false.

88.     During the preliminary examination, Defendant Carter took steps to prevent discovery of material exculpatory information relating to Mr. Cowan, including, but not limited to, the secret sentencing of Mr. Cowan three weeks earlier as a result of her off-the-record sidebar conference with the judge; the terms of Mr. Cowan's one-year sentence in Wayne County Jail that she knew had been ignored to facilitate Mr. Cowan's continued role in 9th  Floor Intake in the Snitch Scheme; Defendant Carter's own involvement in making Mr. Cowan available to assist in the investigation of Mr. Hamilton; Defendant Fleming's use of Mr. Cowan to falsely claim that Mr. Hamilton had confessed to him on the day immediately after his favorable sentencing; and Mr. Cowan's prior involvement with at least three homicide squads of the Detroit Police Department that had resulted in incarceration of at least six individuals.

89.     During the preliminary exam, Defendant Carter repeatedly objected to questions relating to Mr. Cowan's role as an informant, and her objections were sustained.

90.     In making these objections that were sustained, Defendant Carter knew that she was taking steps to prevent discovery of her own role in Mr. Cowan's sentencing three weeks earlier; to prevent discovery of the continued use of Mr. Cowan by Defendant Fleming and others in 9th Floor Intake even though he was supposed to be serving a one-year sentence in Wayne County Jail at the time; to

prevent discovery of her own involvement in making Mr. Cowan available in the investigation of Mr. Hamilton; and to prevent discovery of Defendant Fleming's use of Mr. Cowan to implicate Mr. Hamilton with fabricated evidence of a confession that purportedly occurred at a time when Mr. Cowan was supposed to be serving a one-year sentence in Wayne County Jail.

91.     After making objections in the preliminary examination, Defendant Carter never thereafter produced to Mr. Hamilton and his defense counsel material exculpatory information that she knew existed before becoming involved in Mr. Hamilton's prosecution, including, but not limited to, Mr. Cowan's frequent participation in the Snitch Scheme; Mr. Cowan's receipt of a one-year sentence in Wayne County Jail following an off-the-record sidebar conference in which she had participated; and Mr. Cowan's return to 9th Floor Intake despit his sentencing to one year in Wayne County Jail, where the following day he would purport that Mr. Hamilton had purportedly confessed to him through the fabrication of evidence with Defendant Fleming.

**Mr. Cowan's Disappearance and Reported Death before Mr. Hamilton's Trial**

92.     After his preliminary examination testimony on July 28, 1994, and prior to Mr. Hamilton's trial in October 1995, Mr. Cowan purportedly disappeared and then was reported to have died.

93.     A death certificate purports that Mr. Cowan died at Franklin Care Nursing Home on January 15, 1995, a date on which Mr. Cowan was supposed to have been serving his one-year sentence in Wayne County Jail pursuant to the secret sentencing proceeding that Defendant Carter had helped arrange.

94.     Upon information and belief, no record exists of Mr. Cowan ever having been discharged from Wayne County Jail, and no court order exists permitting his discharge.

95.     Upon information and belief, other officers in the Detroit Police Department and/or other employees of Defendant Wayne County facilitated Mr. Cowan's release from 9th Floor Intake on a date after his testimony in Mr. Hamilton's preliminary examination. Upon information and belief, the identity of other officers in the Detroit Police Department and/or other employees of Defendant Wayne County who were involved in the release of Mr. Cowan from 9th Floor Intake between July 28, 1994, when he testified against Mr. Hamilton in the preliminary exam, and January 15, 1995, when he was reported to have died in a nursing home, will be revealed in discovery in this action.

**Defendants' Failure to Disclose
Existence of the Snitch Scheme and Use of Mr. Cowan**

96.     Prior to Mr. Hamilton's wrongful arrest, prosecution, conviction, and incarceration for the murder of Ms. Bias, Defendant Fleming, along with others in

19

the Detroit Police Department, knew about, perpetuated, and were involved in the Snitch Scheme that included Mr. Cowan.

97.     Prior to Mr. Hamilton's wrongful arrest, prosecution, conviction, and incarceration for the murder of Ms. Bias, Defendant Carter, along with other Wayne County prosecutors, knew about, perpetuated, and were involved in the Snitch Scheme that included Mr. Cowan.

98.     Defendants Fleming and Carter never disclosed the existence of the Snitch Scheme involving Mr. Cowan to Mr. Hamilton and his defense counsel, even though it constituted material exculpatory or impeachment evidence that was required to be disclosed under *Brady v. Maryland*, 373 U.S. 83 (1963) ("*Brady*").

99.     Defendants Fleming and Carter never disclosed the existence of Mr. Cowan's secret sentencing to Mr. Hamilton and his defense counsel, even though it constituted material exculpatory or impeachment evidence that was required to be disclosed under *Brady*.

100.   Defendants Fleming and Carter never disclosed to Mr. Hamilton and his defense counsel that Defendant Fleming had fabricated evidence relating to the purported confession by Mr. Hamilton to Mr. Cowan on July 8, 1994, even though it constituted material exculpatory or impeachment evidence that was required to be disclosed under *Brady*.

**Defendant Wayne County's Policies or Customs**
**Relating to the Ongoing Use of the Snitch Scheme**
**To Secure Wrongful Convictions in Wayne County**

101.   Prior to Mr. Hamilton's prosecution, conviction and incarceration, Defendant Wayne County, though the Wayne County Prosecutor's Office, maintained policies or customs that permitted the Snitch Scheme by Detroit police detectives to continue to operate and to implicate dozens of defendants through fabricated confessions that used the same group of jailhouse informants in 9th Floor Intake, including Mr. Cowan.

102.   Prior to Mr. Hamilton's wrongful prosecution, conviction and incarceration, Defendant Wayne County, through the Wayne County Prosecutor's Office, had an ongoing policy and/or custom of failing to disclose to criminal defendants and their counsel the existence of the Snitch Scheme, including the repeated use of Mr. Cowan and others to secure dozens of convictions through purported jailhouse confessions made to the same snitches in dozens of prosecutions.

103.   Prior to Mr. Hamilton's wrongful prosecution, conviction and incarceration, Defendant Wayne County, through the Wayne County Prosecutor's Office, had an ongoing policy and/or custom of deliberate indifference to Detroit police detectives' repeated use of fabricated evidence through jailhouse informants participating in the Snitch Scheme to secure dozens of convictions in violation of the constitutional rights of defendants.

104.   Prior to Mr. Hamilton's wrongful prosecution, conviction and incarceration, Defendant Wayne County, through the Wayne County Prosecutor's Office, inadequately trained and supervised prosecutors with regard to the unconstitutionality of the Snitch Scheme.

105.   Prior to Mr. Hamilton's wrongful prosecution, conviction and incarceration, Defendant Wayne County, through the Wayne County Prosecutor's Office, followed a course of action among various alternatives by officials responsible for establishing final policy that allowed for the continued operation of the Snitch Scheme despite the unconstitutionality of the fabricated evidence it was producing.

106.   Prior to Mr. Hamilton's wrongful prosecution, conviction, and incarceration, Wayne County prosecutors, including its policymakers, knew that Detroit police detectives were repeatedly using jailhouse informants in 9th Floor Intake to fabricate confessions and knew that one of the snitches being used was Mr. Cowan.

107.   In a memo dated February 8, 1995, prior to Mr. Hamilton's trial, Wayne County Deputy Chief Prosecutor Robert Agacinski authored and circulated a memo entitled "POLICE USE OF PRISONERS TO OBTAIN CONFESSIONS" (the "Agacinski Memo") within the prosecutor's office.

108.   The Agacinski Memo stated in part that Mr. Agacinski had been informed "of the practice of some police investigators to place prisoners on the 9th floor of 1300 Beaubien (the prisoner lock-up [9th Floor Intake]) in the expectation that they will overhear confessions of other suspects and testify to these jailhouse confessions in court."

109.   The Agacinski Memo stated in part that there were "issues" relating to the practice that "should concern us."

110.   The Agacinski Memo stated in part that "promises of leniency are made to these snitches without our approval – or prior knowledge – which exceeds police authority and violates our policies."

111.   The Agacinski Memo stated in part that, "I have been told that the snitches do lie about overhearing confessions and fabricate admissions in order to obtain police favors or obtain the deals promised."

112.   The Agacinski Memo specifically referred to Mr. Cowan by one of his aliases ("Oliver Cohen") and stated with respect to Mr. Cowan that he had been one of the "police prisoners" who had been "kept . . . on the 9th floor and obtained confessions in several cases I am aware of."

113.   Defendant Wayne County, through its policymaking officials, failed to adequately intervene, act, investigate, supervise, or train in response to the disclosures made in the Agacisnki Memo.  Instead, the practices relating to the

Snitch Scheme were permitted to continue unabated through a policy or custom of deliberate indifference to the existence of these unconstitutional actions, including in the subsequent trial of Mr. Hamilton.

114. In a memo dated March 1, 1995, prior to Mr. Hamilton's trial, Timothy Baughman, the chief of research, training and appeals in the Wayne County Prosecutor's Office, authored and circulated a memo entitled, "PRISONER 'SNITCHES'" ("the Baughman Memo").

115. The Baughman Memo stated in part, "The situation described by Agacinski, if true, could cause tremendous problems, not the least of which the police have no authority to make 'deals' with prisoners, in exchange for them acting as 'listening posts.'"

116. The Baughman Memo stated in part, "[S]everal years ago at Shanty Creek[,] federal judge Steven Trott, formerly with the Justice Department, gave a lecture regarding use of 'snitches,' which included a horror story of false testimony regarding supposed inmate 'confessions' to snitches 'compensated' for their testimony (and this in cases where the prosecutor was aware of the arrangements)."

117. The Baughman Memo stated in part, "This is a very dangerous area, ripe for false testimony, and if unauthorized consideration is promised to the 'snitch,' not only is that a problem in terms of lack of police authority, but where the consideration is not communicated to the prosecutor, and then disclosed to the

defense for proper cross-examination, any conviction would be subject to prompt reversal."

118.   The Baughman Memo stated in part, "Besides discussion of the matter with the police department, I would suggest in the meantime that any case which depends on a jailhouse statement made to a fellow inmate be very carefully scrutinized."

119.   Defendant Wayne County, though its policymaking officials, failed to adequately intervene, act, investigate, supervise, or train in response to the disclosures made in the Baughman Memo.  Instead, the practices relating to the Snitch Scheme were permitted to continue through a policy or custom of deliberate indifference to the existence of these unconstitutional actions, including in the subsequent trial of Mr. Hamilton.

120.   Prior to Mr. Hamilton's trial and despite the existence of the Agacisnki Memo, the Baughman Memo and other evidence to be discovered in this action, Defendant Wayne County failed to adequately intervene, act, supervise or train notwithstanding a clear and persistent pattern in which Detroit police detectives were repeatedly using jailhouse informants in 9th  Floor Intake, including Mr. Cowan, to fabricate evidence about confessions purportedly made by suspects.

121.   Prior to Mr. Hamilton's trial, Defendant Wayne County, through its policymaking officials, knew about the Snitch Scheme.

122.   Prior to Mr. Hamilton's trial, Defendant Wayne County, through its policymaking officials, remained deliberately indifferent about the Snitch Scheme.

123.   Defendant Wayne County's customs or policies of deliberate indifference to the Snitch Scheme allowed for the continued operation of the Snitch Scheme after the Agacisnki Memo and Baughman Memo were circulated in early 1995.

124.   Defendant Wayne County's customs or policies of deliberate indifference to the Snitch Scheme were the moving force behind the ensuing deprivation of Mr. Hamilton's constitutional rights of due process in his trial later in 1995, including the failure to disclose material exculpatory or impeachment evidence that was required to be disclosed under *Brady* in violation of Mr. Hamilton's Fourteenth Amendment rights to due process.

**Additional Withheld Evidence relating to the Snitch Scheme and Mr. Cowan**

125.   Neither Defendant Carter nor anyone else in the Wayne County Prosecutor's Office produced the Agacinski Memo or the Baughman Memo to Mr. Hamilton or his defense counsel nor disclosed the existence of the memos or the practices they described, even though the use of Mr. Cowan and others in the Snitch Scheme constituted material exculpatory or impeachment evidence that was required to be disclosed under *Brady*.

26

126.   Neither Defendant Carter nor anyone else in the Wayne County Prosecutor's Office disclosed to Mr. Hamilton or his defense counsel the secret sentencing of Mr. Cowan providing favorable treatment to him that had occurred on July 8, 1994, the very day that Mr. Hamilton had been arrested and brought to 9th Floor Intake.

127.   Neither Defendant Carter nor anyone else in the Wayne County Prosecutor's Office disclosed to Mr. Hamilton or his defense counsel that Mr. Cowan had been brought back to the 9th Floor Intake instead of taken for incarceration at Wayne County Jail on July 8, 1994, as his sentence required.

128.   Neither Defendant Carter nor anyone else in the Wayne County Prosecutor's Office disclosed to Mr. Hamilton or his defense counsel that Mr. Cowan was supposed to be in Wayne County Jail on July 9, 1994, rather than 9th Floor Intake, at the time that he signed a fabricated statement purporting that Mr. Hamilton had confessed to Ms. Bias's murder.

129.   Neither Defendant Carter nor anyone else in the Wayne County Prosecutor's Office disclosed to Mr. Hamilton or his defense counsel that Mr. Cowan had purported to receive confessions while in 9th Floor Intake in at least six other cases prior to the fabricated statement that he signed relating to Mr. Hamilton.

**Use of Mr. Cowan's Fabricated and False Testimony at Mr. Hamilton's Trial**

130.   Mr. Hamilton's trial commenced on October 23, 1995.

27

131.   Based upon representations by Defendant Carter that Mr. Cowan had disappeared and/or died by the time of Mr. Hamilton's trial, Defendant Carter introduced, over the objections of defense counsel, Mr. Cowan's testimony from the July 28, 1994, preliminary examination in which he falsely testified about a confession purportedly made to him by Mr. Hamilton on July 8, 1994, which actually had been fabricated by Defendant Fleming.

132.   Defendant Carter also called Defendant Fleming as a witness, and Defendant Fleming falsely testified about the circumstances of obtaining the purported evidence from Mr. Cowan about the purported confession that he had heard Mr. Hamilton give to him on July 8, 1994.

133.   Defendant Carter presented the testimony of Mr. Cowan at trial even though she knew that she had not disclosed material exculpatory and impeachment evidence relating to Mr. Cowan to Mr. Hamilton or his defense counsel, including, but not limited to, her own knowledge and involvement,  prior to her assignment in Mr. Hamilton's case, in Mr. Cowan's secret sentencing on July 8, 1994, Mr. Cowan's transfer back to 9th Floor Intake on July 8, 1994, when he was supposed to be serving a one-year sentence in Wayne County Jail, and the frequency with which Mr. Cowan had served as a jailhouse snitch for Detroit police detectives in murder cases as part of the Snitch Scheme.

134.   On October 31, 1995, following the introduction of the false testimony of Mr. Cowan and Defendant Fleming, Mr. Hamilton was convicted of second-degree murder in the death of Ms. Bias.

135.   On January 11, 1996, Mr. Hamilton, then 21, was sentenced to 50 to 80 years in prison on the murder charge.

136.   From 1996 to 2020, Mr. Hamilton was wrongly incarcerated in Michigan prisons due to his conviction in Ms. Bias's murder.

137.   During these years, Mr. Hamilton suffered unimaginable deprivations of freedom and loss of enjoyment of life.

138.   Mr. Hamilton steadfastly maintained his innocence.

**Vacation of Mr. Hamilton's Conviction**

139.   Mr. Hamilton exhausted all appeals with regard to his conviction, and he authored letters while in Michigan prisons seeking help in establishing that he had been wrongfully convicted in the murder of his foster mother.

140.   In seeking to establish his innocence, Mr. Hamilton received help from new attorneys and advocates.

141.    On or about 2018, the Wayne County Prosecutor Office's Conviction Integrity Unit undertook review of Mr. Hamilton's conviction.

142.   Among other undertakings, the Conviction Integrity Unit reviewed documents that had not been produced to Mr. Hamilton or his defense counsel

29

relating to the Snitch Scheme and the use of Mr. Cowan, including, but not limited to, the Agacinski Memo and the Baughman Memo.

143.   Among other undertakings, the Conviction Integrity Unit reviewed DNA test results analyzed by Dr. Greg Hampikian, an expert in DNA analysis and professor of biology and criminal justice at Boise State University, that determined that Mr. Hamilton had been excluded as the source of the male DNA found in the fingernail scrapings from Ms. Bias's hand, which had not been tested or even disclosed prior to the trial.

144.   As a result of its review of Mr. Hamilton's conviction, the Wayne County Prosecutor's Office joined in a motion to vacate Mr. Hamilton's conviction.

145.   On September 30, 2020, a Wayne County Circuit Judge granted the motion, vacated the conviction, dismissed all charges against Mr. Hamilton, and terminated the proceedings in his favor.

146.   At the time of Mr. Hamilton's release from prison in the wrongful arrest, prosecution and conviction, Mr. Hamilton had been deprived of his liberty for 26 years, two months and two days – from July 8, 1994, to September 30, 2020 – among other harm, which included, but was not limited to, loss of enjoyment of life, loss of income, and the traumatic experience of wrongful incarceration.

147. Upon information and belief, while Mr. Hamilton was wrongfully incarcerated for decades, Defendant Carter left the Wayne County Prosecutor's Office, and she continues to practice law in the state of Michigan.

148. Upon information and belief, while Mr. Hamilton was wrongfully incarcerated for decades, Defendant Fleming was terminated for cause by the Detroit Police Department.

### Count I – 42 USC § 1983 – *Brady* Violation – Defendant Fleming

149. Plaintiff incorporates by reference each preceding paragraph.

150. At all relevant times, Defendant Fleming was acting under color of law.

151. At all relevant times, Mr. Hamilton had a clearly established constitutional right secured by the Fourteenth Amendment to not be deprived of due process as a result of the withholding of material exculpatory or impeachment evidence by a government officer.

152. At all relevant times, Defendant Fleming had an affirmative constitutional duty to turn over evidence in his possession and knowledge that was favorable to Mr. Hamilton.

153. Defendant Fleming breached his constitutional duty to turn over material exculpatory and favorable information to Mr. Hamilton.

154. By deliberately and knowingly not disclosing material and exculpatory information known and available to him in violation of his constitutional obligation,

31

Defendant Fleming violated *Brady* and deprived Mr. Hamilton of due process under the Fourteenth Amendment.

155.    Defendant Fleming acted maliciously and wantonly in withholding and suppressing exculpatory information favorable to Mr. Hamilton.

156.    Defendant Fleming participated in the arrest and prosecution of Mr. Hamilton in bad faith.

157.    Defendant Fleming's conduct was willful, wanton and reckless.

**Count II – 42 USC § 1983 – Fabrication of Evidence – Defendant Fleming**

158.    Plaintiff incorporates by reference each preceding paragraph.

159.    At all relevant times, Defendant Fleming was acting under color of law.

160.    At all relevant times, Mr. Hamilton had a clearly established constitutional right secured by the Fourth and Fourteenth Amendments to be free from arrest and to not be deprived of due process as a result of the fabrication of evidence to aid in an arrest and conviction.

161.    At all relevant times, Defendant Fleming had an affirmative constitutional duty to not fabricate evidence to aid in the arrest and conviction of Mr. Hamilton.

162.    Defendant Fleming breached his constitutional duty by fabricating evidence and providing false testimony to aid in the arrest and conviction of Mr.

Hamilton through the use of Mr. Cowan as a jailhouse snitch who provided false statements and testimony relating to a purported confession from Mr. Hamilton.

163. By deliberately and knowingly fabricating evidence in violation of his constitutional obligations, Defendant Fleming violated Mr. Hamilton's rights to be free from arrest without probable cause and to due process under the Fourth and Fourteenth Amendments.

164. Defendant Fleming acted maliciously and wantonly in fabricating evidence and procuring false testimony.

165. Defendant Fleming participated in the arrest and prosecution of Mr. Hamilton in bad faith.

166. Defendant Fleming's conduct was willful, wanton and reckless.

**Count III – 42 USC § 1983 – Malicious Prosecution – Defendant Fleming**

167. Plaintiff incorporates by reference the preceding paragraphs.

168. At all relevant times, Defendant Fleming was acting under color of law.

169. At all relevant times, Mr. Hamilton had a clearly established constitutional right secured by the Fourth and Fourteenth Amendments not to be seized and deprived of liberty by a government official based on fabricated evidence, false statements, and/or by the withholding of materially exculpatory information offered to manufacture probable cause for an arrest and conviction.

170.   At all relevant times, Defendant Fleming had an affirmative constitutional duty to not fabricate evidence, make false statements, and/or withhold material exculpatory information to establish probable cause.

171.   Defendant Fleming breached his constitutional duty by fabricating evidence, making false statements, and/or withholding material exculpatory information to establish probable cause.

172.   Defendant Fleming influenced and participated in the decision to prosecute Mr. Hamilton through the fabrication of Mr. Cowan's testimony relating to Mr. Hamilton's purported confession and through his own false testimony relating to Mr. Cowan.

173.   There was no probable cause for the criminal prosecution of Mr. Hamilton without the fabricated evidence and false testimony that Defendant Fleming participated in creating.

174.   As a consequence of the legal proceedings, Mr. Hamilton suffered a deprivation of liberty for more than 26 years.

175.   The criminal proceedings brought against Mr. Hamilton terminated in Mr. Hamilton's favor.

176.   Defendant Fleming acted maliciously and wantonly fabricating evidence, making false statements, and/or withholding material exculpatory information.

177.   Defendant Fleming participated in the arrest and prosecution of Mr. Hamilton in bad faith.

178.   Defendant Fleming's conduct was willful, wanton and reckless

### Count IV – 42 U.S.C. § 1983– Civil Conspiracy – Defendants Fleming and Carter

179.   Plaintiff incorporates the preceding paragraphs by reference.

180.   At all relevant times, Defendants Fleming and Carter were acting under color of law.

181.   At all relevant times, Mr. Hamilton had a clearly established constitutional right secured by the Fourth and Fourteenth Amendments to be free from arrest and to not be deprived of due process as a result of the fabrication of evidence to aid in an arrest and conviction.

182.   At all relevant times, a plan existed among Detroit Police Department homicide detectives, including, but not limited to, Defendant Fleming, to use Mr. Cowan and others as snitches in 9th Floor Intake to fabricate evidence of confessions purportedly made by suspects in an effort to close murder cases via the Snitch Scheme.

183.   At all relevant times, a plan existed among Detroit Police Department homicide detectives and investigators, Wayne County Prosecutors, including but not limited to Defendant Fleming and Defendant Carter, and Mr. Cowan, for Mr. Cowan

to provide false testimony in exchange for continued leniency in sentencing and other benefits, and to conceal that plan from Mr. Hamilton and others like him.

184.   At all relevant times, a plan existed among Detroit Police Department homicide detectives, Wayne County prosecutors, including, but not limited to, Defendant Fleming and Defendant Carter, and the snitches, including Mr. Cowan, to prevent discovery of the Snitch Scheme and to allow its continued use in the investigation, charging and prosecution of individuals in murders, including the investigation, charging and prosecution of Mr. Hamilton.

185.   At all relevant times, a plan existed among Detroit Police Department homicide detectives and Wayne County prosecutors, including, but not limited to, Defendant Fleming and Defendant Carter, and Mr. Cowan, to continue to use Mr. Cowan in the Snitch Scheme in 9th Floor Intake even after he had been sentenced on July 8, 1994, to one year in Wayne County Jail.

186.   Participants in these plans shared a conspiratorial objective to deprive individuals, including Mr. Hamilton, of their constitutional rights, including, but not limited to, their rights to not be deprived of due process as a result of the fabrication of evidence to aid in their arrest and conviction.

187.   Defendant Fleming committed overt acts in furtherance of the conspiracy, including, but not limited to, the fabrication of a statement provided to Mr. Cowan to sign about a purported confession by Mr. Hamilton.

188.    Defendant Carter committed overt acts in furtherance of the conspiracy, including, but not limited to, steps to keep secret the existence and terms of Mr. Cowan's sentencing on July 8, 1994, steps to aid in investigations by keeping Mr. Cowan available for use as a snitch, and the continued use of Mr. Cowan in 9th Floor Intake in the case against Mr. Hamilton after Mr. Cowan was sentenced to one year in Wayne County Jail.

189.    The acts taken by Defendant Fleming, Defendant Carter and others in furtherance of the conspiracy were taken outside the scope of their proper constitutional duties acting under color of law.

190.    Defendants acted maliciously and wantonly in conspiring in the plan to deprive Mr. Hamilton and others of due process.

191.    Defendants acted in bad faith.

192.    Defendants' conduct was willful, wanton and reckless.

**Count V- 42 USC § 1983 – Failure to Intervene – Defendant Carter**

193.    Plaintiff incorporates the preceding paragraphs by reference.

194.    At all relevant times, Defendant Carter was acting under color of law.

195.    At all relevant times, it was clearly established that a law enforcement officer had a duty to intervene to prevent violation of constitutional rights by other law enforcement officers, including rights secured by the Fourth and Fourteenth

Amendments relating to the unconstitutionality of using of fabricated evidence to make arrests and secure convictions.

196.   Defendant Carter violated her constitutional duty to intervene when she failed to act after becoming aware that Mr. Cowan had been used to secure a purported confession from Mr. Hamilton on July 9, 1994, in 9th Floor Intake, the day after she had participated in the secret sentencing of Mr. Cowan that provided for him to serve a one-year sentence beginning immediately in Wayne County Jail.

197.   Defendant Carter violated her constitutional duty to intervene when she failed to act after becoming aware that Mr. Cowan was continuing to be used by Detroit police detectives to implicate additional suspects through purported confessions on the 9th Floor Intake at a time when he had been ordered to be held in Wayne County Jail.

198.   Defendant Carter violated her constitutional duty to intervene when she failed to act after becoming aware that Detroit police detectives' serial use of Mr. Cowan as a jailhouse snitch was continuing exactly one day after her involvement in the secret sentencing of Mr. Cowan to serve a one-year sentence in Wayne County Jail.

199.   Defendant Carter's failure to intervene preceded her involvement in the judicial process in Mr. Hamilton's case.

200.   Defendant Carter's failure to intervene caused Mr. Hamilton's Fourth Amendment and Fourteenth Amendment rights to be violated.

201.   Defendant Carter acted maliciously and wantonly in failing to intervene.

202.   Defendant Carter's conduct was in bad faith.

203.   Defendant Carter's conduct was willful, wanton and reckless.

**Count VI – 42 USC § 1983 – *Brady* Violation – Defendant Carter**

204.   Plaintiff incorporates the preceding paragraphs by reference.

205.   At all relevant times, Defendant Carter was acting under color of law.

206.   At all relevant times, Mr. Hamilton had a clearly established constitutional right secured by the Fourteenth Amendment to not be deprived of due process as a result of the withholding of material exculpatory or impeachment evidence by a government officer.

207.   At all relevant times, Defendant Carter had an affirmative constitutional duty to turn over evidence in her possession and knowledge that was favorable to Mr. Hamilton.

208.   Defendant Carter breached her constitutional duty to turn over material exculpatory and favorable information to Mr. Hamilton, specifically including, with respect to her actions prior to undertaking the prosecution of Mr. Hamilton, her involvement in the secret sentencing of Mr. Cowan in which she had participated in

39

on July 8, 1994, and her knowledge of the ensuing use by Defendant Fleming of Mr. Cowan in a purported confession from Mr. Hamilton in 9th Floor Intake on the same day, when Mr. Cowan was supposed to be serving a one-year sentence in Wayne County Jail.

209. By deliberately and knowingly not disclosing material and exculpatory information known and available to her in violation of her constitutional obligation, Defendant Carter violated *Brady* and deprived Mr. Hamilton of due process under the Fourteenth Amendment.

210. Defendant Carter acted maliciously and wantonly in withholding and suppressing exculpatory information favorable to Mr. Hamilton.

211. Defendant Carter's conduct was in bad faith.

212. Defendant Carter's conduct was willful, wanton and reckless.

**Count VII – 42 USC § 1983 – *Monell* Liability - Defendant Wayne County**

213. Plaintiff incorporates the preceding paragraphs by reference.

214. Under *Monell v. New York City Dep't of Social Services*, 436 U.S. 658, 694 (1978), a local government can be held liable under 42 USC § 1983 for its own wrongdoing.

215. Defendant Wayne County maintained customs or policies of deliberate indifference in failing to adequately intervene, act, investigate, supervise or train in response to disclosures about the existence of the Snitch Scheme made within the

Wayne County Prosecutor's Office relating to dozens of convictions prior to Mr. Hamilton's trial that were the moving force in Mr. Hamilton's wrongful prosecution, conviction and incarceration.

216. Defendant Wayne County's customs or policies of deliberate indifference in failing to adequately intervene, act, investigate, supervise or train with respect to the Snitch Scheme occurred despite the existence of a clear and persistent pattern of violations of constitutional rights in dozens of previous cases handled by the Wayne County Prosecutor's Office preceding Mr. Hamilton's prosecution and trial, specifically including the failure to disclose *Brady* material relating to the Snitch Scheme.

217. Defendant Wayne County's customs or policies of deliberate indifference in failing to adequately intervene, act, investigate, supervise or train with respect to the Snitch Scheme began before and continued after dissemination of the Agacinski Memo and the Baughman Memo in early 1995.

218. Defendant Wayne County's customs or policies of deliberate indifference in failing to adequately intervene, act, investigate, supervise or train with respect to the Snitch Scheme continuing after dissemination of the Agacinski Memo and the Baughman Memo were the moving force in the violation of Mr. Hamilton's constitutional rights.

219.   As a direct and proximate result of Defendants' violations of his constitutional rights as set forth above, Mr. Hamilton was wrongfully arrested, prosecuted, convicted, and then incarcerated for more than 26 years, where he was deprived of his liberty and suffered great damage.

## PRAYER FOR RELIEF

Plaintiff Lacino Hamilton requests damages for his wrongful arrest, prosecution, conviction, and incarceration in violation of the Constitution and pursuant to 42 U.S.C. § 1983, as to Defendant Fleming and Defendant Carter, including:

a.  Past and future compensatory damages, including, loss of liberty, loss of enjoyment of life, loss of income, and the traumatic experience of wrongful incarceration, among other harm;

b.  Punitive damages;

c.  Reasonable attorney fees and costs pursuant to 42 U.S.C. § 1988;

d.  Costs and disbursements pursuant to 42 U.S.C. § 1920; and

e.  Such other and further relief as the Court deems just and proper.

THE GOOGASIAN FIRM, P.C.

By  /s/ Thomas H. Howlett
      Thomas H. Howlett (P57346)
      Dean M. Googasian (P53995)
      The Googasian Firm, P.C.
      Attorneys for Plaintiff
      6905 Telegraph Road, Suite 140
      Bloomfield Hills, MI 48301
      (248) 502-0862
      thowlett@googasian.com

Dated: August 17, 2022

## JURY DEMAND

Plaintiff Lacino Hamilton demands a jury trial in this matter.

THE GOOGASIAN FIRM, P.C.

By /s/ Thomas H. Howlett
      Thomas H. Howlett (P57346)
      Dean M. Googasian (P53995)
      The Googasian Firm, P.C.
      Attorneys for Plaintiff
      6905 Telegraph Road, Suite 140
      Bloomfield Hills, MI 483031
      (248) 502-0862
      thowlett@googasian.com

Dated: August 17, 2022