UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **LACINO HAMILTON,** | **2-22-CV-11926-TGB-CI** |
| Plaintiff, | HON. TERRENCE G. BERG |
| vs. | |
| | **ORDER DENYING FLEMING AND RICE'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 44);** |
| **JAMES FLEMING, WILLIAM RICE, and RUTH CARTER,** | |
| Defendants. | **AND GRANTING CARTER'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 40)** |

Plaintiff Lacino Hamilton sued former Detroit Police Department Detectives James Fleming and William Rice, as well as former Wayne County assistant prosecutor Ruth Carter (jointly, "Defendants"), for violating his rights under the Constitution and state law when they investigated and prosecuted him for the 1994 murder of his foster mother, Willa Bias. Compl. at 1, 3. Defendants have moved for summary judgment and dismissal of Hamilton's claims. After carefully reviewing the claims, the record, and the law, and considering the arguments of the parties, both in their briefs and in person before the Court, the Court concludes that as a prosecuting attorney carrying out duties related to her functions as a prosecutor, Defendant Carter has absolute immunity that shields her from Hamilton's claims. As to the claims against

Defendants Fleming and Rice, however, issues of fact exist that prevent the Court from concluding that they are entitled to judgment as a matter of law. Therefore, Defendant Carter's Motion for Summary Judgment must be **GRANTED**, while Defendants Fleming and Rice's Motion for Summary Judgment must be **DENIED**.

## I. FACTS

Hamilton served 26 years in prison on convictions for the murder of his foster mother, convictions that the Wayne County Prosecutor's Conviction Integrity Unit later concluded were unjustified. Compl. at 2. In August 2022, Hamilton filed a lawsuit against Defendant James Fleming, a former detective for the Detroit Police Department ("DPD"); Defendant Ruth Carter, a former assistant prosecutor for the Wayne County Prosecutor's Office; and Defendant Wayne County. ECF No. 1, PageID.3. The Court later dismissed Wayne County from the case. ECF No. 52. In December 2023, Hamilton filed an Amended Complaint ("the Complaint, or "Compl."). *See* ECF No. 33, Compl. at 3 (citing to internal page number because the document lacks PageID numbers). The Amended Complaint added William Rice, a DPD Homicide Section supervisor, as a Defendant.

Hamilton alleges that his convictions arose from the fact that Carter, Fleming, and Rice participated in a so-called "snitch scheme" in which the DPD would give certain detainees held on the 9th floor of the DPD headquarters special privileges like meals, phone calls, and

conjugal visits with girlfriends, in exchange for implicating criminal defendants like Hamilton with false confessions. *See, e.g.,* ECF No. 50, PageID.2306-07, PageID.2335.

Hamilton submits deposition testimony from people who claim to have been "snitches" in that 9th floor scheme. ECF No. 50, PageID.2310-11. Those individuals testified that Rice personally gave them such benefits in exchange for generating false testimony against others, and that Rice used their information in trials. *Id.* at PageID.2313-14. One of the informants Rice allegedly worked with in the course of this scheme was Oliver Cowan, whose testimony was critical in Hamilton's murder trial, and therefore in this lawsuit. *Id.* And Rice was "thoroughly knowledgeable with every homicide investigation that was opened or ongoing" in the DPD. *Id.* at PageID.2313.

On July 8, 1994, Carter attended the sentencing of Oliver Cowan, one of the informants involved in the "snitch scheme." ECF No. 47, PageID.2151-52; ECF No. 42, PageID.1103. According to the transcript of the sentencing, Carter had a "side-bar" discussion with the sentencing judge, Cowan's defense attorney, and a homicide police officer regarding a possible disposition of the case. After that side-bar, the judge moved Cowan's sentencing "into the Court's jury room 'away from the prying eyes of the public.'" ECF No. 42-10,  PageID.1179.

In the ensuing closed-door sentencing, a DPD detective testified that Cowan had been "of considerable assistance" to the DPD and had

3

assisted in incarcerating six people for murder. ECF No. 42, PageID.1111-12. After the detective listed several cases in which Cowan was then providing useful information, the sentencing judge inquired whether the detective would "expect [Cowan's] continued cooperation and testimony in the relatively immediate future." ECF No. 42, PageID.1112; ECF No. 42-10, PageID.1183. The detective answered yes. ECF No. 42, PageID.1112. The judge told Cowan that he "expected continuing cooperation with homicide on the cases referred to," and sentenced Cowan to one year in jail and one year of probation. ECF No. 42-10, PageID.1184. Cowan did not go to jail, though. Instead, he was brought back to the 9th floor of the DPD headquarters. *Id.* at PageID.1113.

Hamilton was arrested that same day, July 8, 1994. ECF No. 42-25, PageID.1304 (Arrest Report). Darnell Thompson, who said he knew Hamilton, had given a statement the previous day, on July 7, 1994, to DPD that Hamilton had told him he had murdered someone. *See* ECF No. 44, PageID.1353. Thompson did not testify at trial. ECF No. 50, PageID.2324. On July 9, Cowan signed a statement for DPD describing a purported confession made by Hamilton that he had killed his foster mother, Willa Bias. *Id.* at PageID.1115. Cowan would later testify that Hamilton had been on the 9th floor for "[t]hree or four" days before Cowan spoke to him, but according to the Arrest Report, Hamilton had only been in custody one day when Cowan signed his statement. Fleming wrote a police report stating that Cowan had heard from Hamilton that Hamilton

4

had killed Ms. Bias. ECF No. 50, PageID.2321. According to the testimony of one of the other 9th floor informants involved in the scheme, Fleming asked Cowan whether he was "ready to earn his keep," and gave Cowan a statement to sign that was pre-written. *Id.* at PageID.2322-23.

Hamilton was then indicted and tried for the murder of Ms. Bias. Cowan testified at the preliminary examination, and his testimony was subject to cross-examination. ECF No. 40-2, PageID.1000-27. And while Darnell Thompson did not testify, Cowan would testify that Cowan asked Thompson, who he called Hamilton's "little friend:" "I didn't see how he could [kill Ms. Bias]. And then [Thompson] said, 'yes, he is crazy.'" ECF No. 44-10, PageID.1939. The other evidence against Hamilton included allegations that he had mistreated Ms. Bias several times in the past, and the testimony of one of Ms. Bias' friends that Ms. Bias was scared of Hamilton. ECF No. 44, PageID.1389. Hamilton also cashed a check from Ms. Bias sometime after she was killed, with an allegedly forged signature. *Id.* at PageID.1377.

Cowan died before Hamilton's trial. ECF No. 50, PageID.2314-15. But in Hamilton's trial, Carter—the prosecuting attorney—presented Cowan's past testimony that had been given at the preliminary exam. In summing up the government's evidence, Carter stated:

> But, ladies and gentlemen, I think it's the
> transcript of Oliver Cowan . . . that gives us the

> true deal, tells us what really happened. And
> that's what's important.

ECF No. 44-8, PageID.1814; ECF No. 50, PageID.2326.

Cowan's testimony was attacked before, during, and after trial by Hamilton's attorneys, who called him a snitch, and implied that he had received inducements from the government for his testimony against Hamilton. *See* ECF No. 51, PageID.3960 (stating that Hamilton's pretrial attorney, Robert Slameka, had complained about police investigators placing prisoners on the 9th floor in the expectation they will overhear confessions of other suspects); ECF No. 44, PageID.1374-75 (a list of accusations by Hamilton's attorneys against Cowan), PageID.1356-61. But the jury nonetheless returned a verdict of guilty against Hamilton. ECF No. 50, PageID.2303-04.

On September 30, 2020, after Hamilton had spent 26 years in Michigan prison, a Michigan court vacated his convictions for the murder of Ms. Bias. *Id.* The Wayne County Prosecutor's office sought and received dismissal of Hamilton's convictions because: "Hamilton had been convicted based on the word of a 'jailhouse snitch,' who claimed that Hamilton had confessed to him . . . . He made these claims against Hamilton – and numerous others – to obtain leniency for his own criminal conduct." *Id.* at PageID.2304.

After Hamilton filed this lawsuit, Defendants filed two separate motions for summary judgment. Carter filed a Motion for Summary

Judgment on March 28, 2024. ECF No. 40. Hamilton filed a Response on April 17, 2024, ECF No. 42, and Carter filed a Reply on May 1, 2024. ECF No. 45. Fleming and Rice jointly filed a Motion for Summary Judgment on April 30, 2024. ECF No. 44. Hamilton filed a Response on May 17, 2024, ECF No. 50, and Fleming and Rice filed a Reply on May 31, 2024. ECF No. 51. On March 25, 2025, the Court held an in-person hearing in which the Court heard argument from the parties on both Motions for Summary Judgment.

## II. STANDARD OF REVIEW

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact such that the movant is entitled to a judgment as a matter of law." *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013); see also Fed. R. Civ. P. 56(a). A fact is material only if it might affect the outcome of the case under governing law. *See Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 249 (1986).

On a motion for summary judgment, the Court must view the evidence, and any reasonable inferences drawn from the evidence, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus.*

7

*Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted); *Redding v. St. Eward*, 241 F.3d 530, 531 (6th Cir. 2001).

The moving party has the initial burden of demonstrating an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party carries this burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587. The trial court is not required to "search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989). Instead, the "nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001). The Court must then determine whether the evidence presents a sufficient factual disagreement to require submission of the challenged claims to the trier of fact or whether the moving party must prevail as a matter of law. *See Anderson*, 477 U.S. at 252. For the Court to grant summary judgment, the evidence cannot be such that "a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

### III. ANALYSIS

### A.   Carter's Motion for Summary Judgment

Carter moves for summary judgment of dismissal on the grounds that Hamilton's claims against her are barred by the doctrine of absolute

8

immunity as applied to prosecutors acting in the course of their prosecutorial functions. ECF No. 40, PageID.966-68. For the reasons that follow, Carter's Motion must be **GRANTED**.

### 1.   Hamilton's Claims Against Carter

Hamilton claims that Carter engaged in a civil conspiracy under 42 U.S.C. § 1983 ("Section 1983"), in which the Detroit Police Department would fabricate evidence of confessions by rewarding informants held on the 9th floor of the Detroit Police Headquarters. Compl. at 5-7, 36-38. Hamilton claims that Carter failed to intervene to stop this scheme as required by Section 1983 after Carter became aware that Cowan had provided a false confession purportedly made by Hamilton. Compl. at 38-40. And Hamilton claims that Carter failed to provide Hamilton with material exculpatory or impeachment evidence, as required by Section 1983. Compl. at 40-41.

### 2.   The Defense of Absolute Immunity

Carter argues that Hamilton's claims against her are barred under the doctrine of absolute prosecutorial immunity. ECF No. 40, PageID.982. She bears the burden of proving that absolute immunity applies. *Burns v. Reed*, 500 U.S. 478, 486 (1991).

State prosecutors receive absolute immunity from suit for conduct within the scope of their prosecutorial duties in connection with the initiation and pursuit of criminal prosecutions. *Imbler v. Pachtman*, 424 U.S. 409, 424 (1976). To be covered by absolute immunity, the activity

must be "intimately associated with the judicial phase of the criminal process." *Id.* at 430-31. However, "a prosecutor's investigatory and administrative actions—unrelated to preparation for initiating or conducting a prosecution—are not entitled to absolute immunity." *Kyles v. Cnty. of Oakland*, 696 F. Supp. 3d 390, 395–96 (E.D. Mich. 2023) (*citing Burns*, 500 U.S. at 493). And "where the role as advocate has not yet begun, namely prior to indictment, or where it has concluded, absolute immunity does not apply." *Spurlock v. Thompson*, 330 F.3d 791, 799 (6th Cir. 2003).

In deciding whether a prosecutor's conduct was that of an advocate or an investigator, courts apply a "functional" approach, looking to the "nature of the function performed, not the identity of the actor who performed it." *Kyles*, 696 F. Supp. 3d at 396 (*quoting Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993)). "The line between conduct that is part of a preliminary investigation and conduct that is intimately associated with the judicial phase of a criminal proceeding is difficult to draw in some cases." *Prince v. Hicks*, 198 F.3d 607, 612 (6th Cir. 1999).

### 3. Carter Has Absolute Immunity for Appearing at Cowan's Sentencing

The conduct relevant to this issue is Carter's involvement in Cowan's sentencing. Carter attended Cowan's sentencing on July 8, 1994, and while there had an off-the-record discussion with the judge in that case. ECF No. 47, PageID.2151-52. Following that discussion, the judge

10

moved Cowan's sentencing "into the Court's jury room 'away from the prying eyes of the public. . . .'" ECF No. 42-10, PageID.1179 (Transcript of July 8, 1994 Sentencing.). The judge commented that "I don't think anybody has any objection given the nature of what we are about to talk about." *Id.*

During Cowan's closed-door July 8, 1994 sentencing, a DPD detective testified that Cowan had been "of considerable assistance" to the DPD and had assisted in incarcerating six people for murder. ECF No. 42, PageID.1111-12. The sentencing judge inquired whether the detective would "expect [Cowan's] continued cooperation and testimony in the relatively immediate future." *Id.* at PageID.1112. The detective answered yes. *Id.* The judge then sentenced Cowan to one year in jail and one year probation. *Id.* Instead of going to jail, Cowan was brought back to the 9th floor of the DPD headquarters. *Id.* at PageID.1113. Just one day later, on July 9, Cowan signed a statement for DPD describing a purported confession made by Hamilton to the murder. *Id.* at PageID.1115.

The question before the Court is whether Carter's conduct was "investigative" or "prosecutorial."

Hamilton makes several arguments for why the Court should view Carter's conduct as investigative. In his briefs, and through his attorneys at the hearing held on Carter's Motion, Hamilton argues that because Carter's conversation with Cowan's sentencing judge was not on the

record, it should not be viewed as prosecutorial advocacy. Courts find that making requests, arguments, and concessions during sentencing hearings is advocacy and is protected by absolute prosecutorial immunity. *See Blair v. Osborne*, 777 F. App'x 926, 929 (10th Cir. 2019); *Peace v. Baker*, 697 F. Supp. 1145, 1147 (D. Nev. 1988). Even if Carter's statements were not on the record, her pre-sentencing conduct was "intimately associated with the judicial phase of the criminal process." *Imbler*, 424 U.S. at 424. The sentencing judge made it clear that the "side bar conference" involved Carter, Cowan's defense attorney, and a homicide officer and that the discussion was "with regard to possible disposition in this case." ECF No. 42-10, PageID.1179. It is clear that Carter's role involved "advocating" for some outcome at a proceeding in the judicial phase of the criminal process. Hamilton has presented no authority demonstrating that a prosecutor's statements to a court in sentencing must be on the record to be protected by absolute immunity.

Hamilton's next argument is a closer call. Hamilton states that in appearing at the Cowan sentencing, "Carter was not engaged in any prosecutorial duty . . . . [but] was, instead, aiding DPD homicide in its continued use of a serial snitch on the 9th floor lockup." ECF No. 42, PageID.1122. At the hearing, Hamilton's attorney noted this Court's opinion in *Kyles*, 699 F. Supp. 3d at 397, for the proposition that a prosecutor is not entitled to absolute immunity when serving as a legal advisor to the police. Hamilton implicitly argues that Carter's conduct

12

served to make Cowan available for *future* false testimony. *See id.*, PageID.1118-19 ("As a direct and immediate result of the confidential intervention by Ms. Carter . . . . the snitch was told that continued cooperation with police was a condition of his favorable one-year jail sentence . . . .").

As a preliminary note, Carter's attorney argued before the Court that Carter's conduct was "irrelevant" to Hamilton's lawsuit, because it occurred before Hamilton's arrest. But that is not necessarily true. If Carter had sought to generate false testimony from a jailhouse informant, not caring who the informant implicated, her conduct would have been investigative even though the eventual victim of the false testimony had not yet been arrested.

Persuasive out-of-circuit caselaw finds that where prosecutors take actions to generate false testimony from informants, the prosecutors' actions are investigative and not entitled to absolute immunity. *See Fogle v. Sokol*, 957 F.3d 148, 163-64 (3d Cir. 2020) (finding that prosecutors was not entitled to absolute immunity where they encouraged police officers to solicit false statements from jailhouse informants); *Roberts v. Lau*, 90 F.4th 618, 625 (3d Cir. 2024) (finding that a prosecutor was not entitled to absolute immunity where he sought a new witness to provide false testimony), *cert. denied sub nom. Baer v. Roberts*, 145 S. Ct. 414, 220 L. Ed. 2d 169 (2024); *Serrano v. Guevara*, 315 F. Supp. 3d 1026, 1032-35 (N.D. Ill. 2018) (also finding that prosecutors accused of obtaining a

13

false confession from a jailhouse informant were not entitled to absolute immunity).

But in these cases where prosecutors engaged in investigative conduct to generate false testimony from informants, the conduct by the prosecutors was not in-court advocacy, but rather included out-of-court conversations and actions taken by prosecutors with police officers and the informants themselves. *Roberts*, 90 F.4th at 622; *Fogle*, 957 F.3d at 161-62; *Serrano*, 315 F. Supp. 3d at 1035.

Hamilton's argument rests on speculation rather than record evidence, but its theory is that Fleming and Rice could have told Carter that they were operating a "snitch scheme" where informants held on the 9th floor of police headquarters would generate false confessions from other detainees, and that for it to work, they needed Carter to secure a favorable sentence for one of the informants so that he could continue to produce false confessions to be used in future prosecutions. If the record contained any facts showing that Carter had such knowledge, particularly regarding the knowing use of informants to generate false confessions in the future—such facts would point toward the prosecutor's involvement in pre-indictment investigations. But Hamilton can point to no evidence that creates an issue of fact as to Carter's knowledge or participation in the "snitch scheme." The record shows that Carter was aware Cowan was a cooperator, and that he was continuing to cooperate

14

in homicide investigations, but there is no proof suggesting that she was aware of any confessions being false or of an ongoing "snitch scheme."

Moreover, according to the record, Carter's actions were all directly related to in-court conduct. And the caselaw on absolute immunity is clear that conduct "intimately associated with the judicial phase of the criminal process" is subject to absolute immunity. *Imbler*, 424 U.S. at 424. There is no authority for inquiring into the "purpose" of such conduct. When asked at the hearing if any such authority existed, Hamilton's counsel was not able to provide it. To the contrary, such conduct is still subject to absolute immunity when it is done for malicious reasons. "Ascribing impure and malicious motives to a prosecutor is of no consequence if the prosecutor's complained-of act has been performed under conditions that entitle the prosecutor to absolute immunity." *Smith v. Peckler*, No. CIV.A. 05CV190KSF, 2005 WL 1593958, at *3 (E.D. Ky. July 5, 2005)(Forester, J.) (*citing Ireland v. Tunis*, 113 F.3d 1435, 1447 (6th Cir.1997)).

Therefore, because Carter appeared at Cowan's sentencing to advocate for a certain disposition, her actions there were intimately associated with the judicial phase of the criminal process and are protected by absolute immunity. Even if she appeared there with an "investigative purpose," she was still performing advocacy in her role as a prosecutor, and receives absolute immunity as a result.

4.     **Carter's Absolute Immunity for Appearing at Cowan's Sentencing Leads to Absolute Immunity Against Hamilton's Pre-Indictment Claims**

Hamilton's Section 1983 claims against Carter for pre-indictment conduct extend beyond Carter's appearance at Cowan's sentencing. Hamilton alleges that Carter "took steps to allow for Mr. Cowan's ongoing use in the Snitch Scheme in an investigative or administrative capacity" prior to Hamilton's indictment. Compl. at 8-9. Hamilton states that "[u]pon information and belief, [Carter] participated in the sentencing in an effort to prevent disclosure of Mr. Cowan's ongoing role in the Snitch Scheme." Compl. at 10. And Hamilton argues that "a plan existed among Detroit Police Department homicide detectives and investigators, Wayne County Prosecutors, including . . . Carter, and Mr. Cowan, for Mr. Cowan to provide false testimony in exchange for continued leniency . . . ." Compl. at 36-37.

The Court has already ruled that Carter's appearance at Cowan's sentencing is protected by absolute immunity. Therefore, that appearance cannot itself be used as evidence of Carter's participation in the conspiracy. "[A] prosecutor is absolutely immune from a civil conspiracy charge when his alleged participation in the conspiracy consists of otherwise immune acts." *Reasonover v. St. Louis Cnty., Mo.*, 447 F.3d 569, 580 (8th Cir. 2006) (*citing Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1282 (11th Cir. 2002) ("It would be cold comfort for a prosecutor to know that he is absolutely immune from direct liability for

16

actions taken as prosecutor, if those same actions could be used to prove him liable on a conspiracy theory involving conduct for which he was not immune.")). The question, then, is whether there is other non-immunized evidence of Carter's participation in a conspiracy to have Cowan provide false testimony.

The Court finds that there is not. The pleading standard for conspiracy claims is "relatively strict." *Gavitt v. Born*, 835 F.3d 623, 647 (6th Cir. 2016) (*quoting Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003)). And "[a]lthough circumstantial evidence may prove a conspiracy, it is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Gavitt*, 835 F.3d at 623 (internal quotations removed, *quoting Heyne v. Metro Nashville Pub. Sch.*, 655 F.3d 556, 563 (6th Cir. 2011)).

Apart from Carter's participation in Cowan's sentencing, no material facts support a finding that Carter participated in a conspiracy to make Cowan available as a false witness before Hamilton was charged. There have been no allegations that Carter spoke to Fleming, Rice, or Cowan before Hamilton was charged, and Carter has denied knowledge of any "scheme" by DPD to generate false testimony, while no other witness has testified to the contrary. ECF No. 49, PageID.2197-98. Hamilton's only argument is to ask the jury to draw an inference that Carter's appearance at Cowan's sentencing kicks off a chain of

17

circumstantial evidence suggesting her participation in the conspiracy: Carter advocated for Cowan the same day the Hamilton was arrested; Carter requested that Cowan's hearing be non-public; Cowan met Hamilton the next day in the 9th Floor lock-up and made a report to Fleming that Hamilton admitted murdering Ms. Bias. But to survive summary judgment there must be some facts on both sides of the ledger. Here, the facts that followed Carter's court appearance in the sentence do not show Carter's knowledge or participation in any scheme; they only allow the bare supposition or guess that "surely, she must've known something." That is not enough. Moreover, this reasoning depends on using her courtroom advocacy to connect her to Cowan before Hamilton was charged. Such use would accomplish the result prohibited by caselaw: actions for which a prosecutor has absolute immunity cannot be used to prove the prosecutor liable on a conspiracy theory involving conduct for which she was not immune. *Rowe*, 279 F.3d at 1282.

Without using Carter's presence at Cowan's sentencing, Hamilton is left with only "vague and conclusory allegations" that Carter was involved in a conspiracy prior to Hamilton's indictment. *See Gavitt*, 835 F.3d at 632. It is notable that when asked at the hearing, Hamilton's attorney stated that besides Carter's presence at Cowan's sentencing, Hamilton could not point to out-of-court facts showing that Carter was involved in a conspiracy. As such, Carter is entitled to summary

judgment of dismissal: there is no genuine issue of material fact whether she engaged in a conspiracy to violate Hamilton's rights.

### 5. Carter Has Absolute Immunity for her Post-Indictment Conduct

Hamilton's remaining claims against Carter for conspiracy to use Cowan in the case against Hamilton, failure to intervene to prevent such improper use, and failure to disclose evidence all relate to Carter's conduct after Hamilton was indicted, and while Carter was prosecuting Hamilton's case. As such, Carter is entitled to absolute immunity, no matter how allegedly wrongful the conduct.

Prosecutors have absolute immunity for offering, using, or presenting false, misleading, or perjured testimony at trial, or at pretrial appearances in support of initiating a prosecution. *Burns*, 500 U.S. at 489-92; *Myers v. Morris*, 810 F.2d 1437, 1446 (8th Cir. 1987), overruled on other grounds by *Burns*, 500 U.S. at 492-93 (1991). Prosecutors have absolute immunity for intentionally failing to disclose exculpatory evidence, and even for destroying evidence, so long as the choice is made in an "advocative" capacity. *Price v. Montgomery Cnty., Kentucky*, 72 F.4th 711, 720 (6th Cir. 2023) (*quoting Annappareddy v. Pascale*, 996 F.3d 120, 142 (4th Cir. 2021)), cert. denied, 144 S. Ct. 2499, 219 L. Ed. 2d 1319 (2024). Applying this caselaw, Carter's alleged conduct after Hamilton's indictment was within the scope of her prosecutorial duties in connection with the initiation and pursuit of an ongoing criminal

19

prosecution. *See Imbler*, 424 U.S. at 424. As such, Carter receives absolute immunity, even for acts that could have been wrongful. Carter is therefore entitled to summary judgment of dismissal of Hamilton's claims against her. Her Motion for Summary Judgment is **GRANTED**.

### B.   Fleming and Rice's Motion for Summary Judgment

Fleming and Rice make several arguments for why they are entitled to judgment as a matter of law on Hamilton's claims against them. The Court evaluates each of them and finds that Fleming and Rice's Motion must be **DENIED**.

### 1.   Collateral Estoppel

Fleming and Rice argue that collateral estoppel and res judicata bar Hamilton's claims. ECF No. 44, PageID.1380. They argue that because Michigan state courts ruled against Hamilton on the issues raised in this action, Hamilton cannot relitigate those issues in this action. *Id.* at PageID.1387-88.

This argument is without merit. Hamilton's charges were vacated. ECF No. 44, PageID.1365-66. Vacated rulings, and factual determinations associated with them, have no preclusive effect under Michigan law. *See Peterson v. Heymes*, 931 F.3d 546, 554-55 (6th Cir. 2019); *Sanford v. Russell*, 381 F. Supp. 3d 905, 923–24 (E.D. Mich. 2019), *aff'd*, 815 F. App'x 856 (6th Cir. 2020); *Smith v. Cnty. of Wayne*, No. 21-12070, 2023 WL 8788944, at *14 (E.D. Mich. Dec. 19, 2023)(Lawson, J.) (rejecting the argument Hamilton makes here, in another case against

20

DPD members). Collateral estoppel and res judicata therefore do not apply to Hamilton's claims: the state court judgments against him have been vacated and have no preclusive effect.

### 2. *Brady* Violations

Fleming and Rice argue that "Hamilton's knowledge of the 'essential fact' that Cowan received perks for his cooperation is enough to preclude [Hamilton] from raising a *Brady* claim." ECF No. 44, PageID.1375. To make out a *Brady* violation, the fact that the information was withheld must have prejudiced the defendant: that "there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." *Jalowiec v. Bradshaw*, 657 F.3d 293, 305 (6th Cir. 2011), as amended (Nov. 23, 2011). Fleming and Rice cite to *Jalowiec* for the principle that *Brady* "does not assist a defendant who is aware of essential facts that would allow him to take advantage of the exculpatory evidence at issue. . . ." ECF No. 44, PageID.1375 (*citing Jalowiec*, 657 F.3d at 311 (*quoting Coleman v. Mitchell*, 268 F.3d 417, 438 (6th Cir. 2001)).

At the hearing held on Fleming and Rice's Motion, Hamilton's counsel directed the Court's attention to a recent Sixth Circuit case affirming these principles, while noting that the state must still provide the facts "essential to properly question the witness and find the exculpatory or impeaching information." *Clark v. Abdallah*, No. 23-1730, 2025 WL 798971, at *14 (6th Cir. Mar. 13, 2025). "*Brady* 'does not require

21

the state simply to turn over *some* evidence, on the assumption that defense counsel will find the cookie from the trail of crumbs.'" *Clark*, 2025 WL 798971, at *14 (*quoting Barton v. Warden*, 786 F.3d 450, 468 (6th Cir. 2015)).

Fleming and Rice rely on the fact that Hamilton's attorneys called Cowan a snitch, both at the preliminary exam and at trial. ECF No. 44, PageID.1374-75. But at trial, the government never disclosed the essential alleged facts that:

> Cowan was a key member of a snitch witness program in the 9th floor lockup in which Rice was involved; **that Cowan and other snitches would come to the 5th floor to enjoy meals, phone calls, and visits and TVs and VCRs in their cells on the 9th floor**; or that Cowan had introduced him to another recruit to the program, Hewitt-El, who proceeded to implicate three others with false confessions.

ECF No. 50, PageID.2335 (emphasis added).

The prosecution likewise never disclosed the fact that, as alleged, Fleming told Cowan he needed to "earn his keep" after Cowan received a sentence conditioned on cooperation with the government. *Id.* Nor did they disclose the significant fact that Cowan received a lenient sentence which was explicitly conditioned on Cowan's "continuing cooperation with homicide on the cases referred to." ECF No. 42-10, PageID.1184; ECF No. 50, PageID.2318-19.

There is a genuine issue of material fact whether the disclosure of this evidence would have changed the result of the proceeding. As alleged, the police engaged in an elaborate and corrupt scheme to use Cowan and others to generate false evidence. There can be little doubt that failing to disclose that the prosecution's key evidence (a confession by the accused) was actually false—would radically impact the outcome of the defendant's trial. But Defendants do not concede that Cowan's testimony of Hamilton's admission was false—or that such falsity was a fact that would have been disclosed.  Instead,  Defendants point to other evidence suggesting that Hamilton was guilty. ECF No. 44, PageID.1377. Interpreting the facts in the light most favorable to the nonmoving party, however, if a jury were to conclude that Defendants knowingly induced Cowan to create a false confession, such a jury could quite reasonably conclude that the falsity of such a confession—and failing to disclose that it was false—would likely have affected the outcome of the trial.

That this nondisclosure prejudiced Hamilton is apparent from Fleming and Rice's "Exhibit G," the trial transcript of the closing argument in Hamilton's trial. Carter, arguing for Hamilton's guilt, described the evidence the government had, and then said:

> But, ladies and gentlemen, I think it's the transcript of Oliver Cowan . . . that gives us the true deal, tells us what really happened. And that's what's important.

ECF No. 44-8, PageID.1814. At this summary judgment stage, the Court takes Carter at her word. Cowan's testimony was critical to the case against Hamilton, and if, as alleged, it was the product of a scheme to generate false testimony, disclosure of that fact would have affected the outcome of the trial. Without it, the government may have found it extremely difficult to prove Hamilton's guilt beyond a reasonable doubt: the other evidence presented to the jury was circumstantial. *See* ECF No. 44, PageID.1377, PageID.1389. Carter was correct in arguing to the jury that Cowan's testimony was "what's important." ECF No. 44-8, PageID.1814.

And even if the jury were to conclude that Plaintiff had not proven the existence of the "snitch scheme" to manufacture false confessions, it could still conclude that the full contours of Cowan's deal with the government was not disclosed, and that, if it had been, it could have undermined Cowan's credibility to such an extent that it would have affected the jury's verdict. There is a genuine issue of material fact as to whether, if the jury had been told that Cowan received special treatment that included meals, liquor, marijuana, conjugal visits with girlfriends, and that he faced 15 years in prison if he did not cooperate, the jury might have doubted Cowan's credibility so much as to return a verdict of acquittal.

To avoid this obvious conclusion, Fleming and Rice point to the fact that Hamilton's attorneys called Cowan a snitch, and implied that he

24

received inducements from the government for his testimony against Hamilton. *See* ECF No. 51, PageID.3960 (stating, as Fleming and Rice's attorney did at the hearing, that Hamilton's pretrial attorney, Robert Slameka, had complained about police investigators placing prisoners on the 9th floor in the expectation they will overhear confessions of other suspects); ECF No. 44, PageID.1374-75 (a list of accusations by Hamilton's attorneys against Cowan), PageID.1356-62.

But Hamilton's attorneys never received disclosure of the alleged facts such as: (1) Cowan was, in fact, falsely testifying in this case as part of the 9th floor scheme, (2) that Fleming and Rice were *participating* in the scheme, *knowing it to be a scheme to generate false evidence* (e.g., by telling Cowan to "earn his keep"), or (3) the full scope of the favors, inducements, and threats that the government offered Cowan in exchange for his cooperation. There's a big difference between "we have suspicions about the confessions that keep coming from the 9th floor at DPD headquarters," and, as alleged, "we received disclosure from DPD that they are granting inmates all kinds of favors in exchange for false confessions." The "essential fact" not disclosed here is that, as alleged, the "snitch scheme" actually existed. And the failure to disclose the nature of Cowan's deal was another essential fact not fully disclosed. Had these facts been disclosed, there is a genuine issue of material fact whether a reasonable jury could have concluded that Cowan's testimony was false or at least not to be believed. Since Cowan's testimony was

"what's important," ECF No. 44-8, PageID.1814, summary judgment on Hamilton's *Brady* claims must be denied.

### 3. Fabrication of Evidence

Fleming and Rice make similar arguments to seek summary judgment on Hamilton's claims for fabrication of evidence. They argue that such claims require that "a reasonable likelihood exists that the false evidence would have affected the decision of the jury. *Webb v. United States*, 789 F.3d 647, 667 (6th Cir. 2015)." ECF No. 44, PageID.1377. Fleming and Rice argue that even if Cowan's testimony was fabricated, there was enough evidence to convict such that Hamilton was not prejudiced. *Id.* At the summary judgment stage, the Court is not going to ignore Carter's closing argument: Cowan's testimony was "what's important" to the government's case against Hamilton. ECF No. 44-8, PageID.1814. If that evidence was fabricated, there is *easily* a genuine dispute of material fact over whether this would have prejudiced Hamilton. Indeed, it seems highly *improbable* that a jury, upon learning the prosecution had presented a perjured, fabricated, and purchased confession, would nevertheless convict the defendant. Summary judgment is denied.

### 4. Civil Conspiracy

Fleming and Rice argue that Hamilton cannot state a claim of civil conspiracy against themselves and Carter. ECF No. 44, PageID.1378-80. They argue that civil conspiracy claims must be pled with specificity, and

26

that vague and conclusory allegations unsupported by material facts will not suffice. *Id.* at PageID.1379.

As to Carter being a member, Fleming and Rice are correct that Hamilton cannot state a claim of civil conspiracy. *See supra*, "A. Carter's Motion for Summary Judgment;" § 4-5. But Fleming and Rice are incorrect in arguing that Hamilton "has been entirely unable to set forth any facts that would support a conspiracy claim." ECF No. 44, PageID.1380.

The alleged facts Hamilton has set forth supporting a conspiracy claim against Fleming and Rice are as follows:

> There was a scheme on the 9th floor of DPD headquarters, "where snitches, including Cowan . . . received benefits to testify falsely . . . based on information given by the detectives." ECF No. 50, PageID.2309. Hamilton points to the depositions of former detainees who claim to have participated as false informants in that scheme. *Id.* at PageID.2310-11.
>
> According to their testimony, Rice personally gave benefits to cooperating informants on the 9th floor, including, as raised by Hamilton's counsel at the hearing on Fleming and Rice's Motion, personally meeting with a judge to secure a favorable sentence for an informant. *Id.* at PageID.2313-14. Rice also worked with Cowan. *Id.* And he was "thoroughly knowledgeable with every homicide investigation that was opened or ongoing" in the DPD. *Id.* at PageID.2313. These alleged facts would allow a jury to infer that Rice had knowledge of the scheme on the 9th floor and acted to support it.

At Cowan's sentencing on July 8, 1994, a DPD detective testified that DPD expected Cowan's "continued cooperation and testimony in the relatively immediate future." *Id.* at PageID.2318. Cowan was brought back to the 9th floor after the sentencing. *Id.* at PageID.2319.

The *day after* Cowan's sentencing, Fleming created a police report stating that Cowan had heard from Hamilton that Hamilton had killed Ms. Bias. *Id.* at PageID.2321. One of the fellow informants on the 9th floor testified that Fleming asked Cowan whether he was "ready to earn his keep," and gave Cowan a pre-written statement to sign. *Id.* at PageID.2323.

With these alleged facts, summary judgment in favor of Fleming and Rice on the civil conspiracy count is inappropriate. A reasonable jury could find that (1) a single plan existed between Rice and Fleming to use false confessions generated by individuals on the 9th floor, that (2) Fleming and Rice shared in the general conspiratorial objective to deprive persons (including Hamilton) of his constitutional rights, and that (3) Fleming and Rice both committed overt acts in furtherance of the conspiracy that caused injury. *See* ECF No. 44, PageID.1378-79 (*citing Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011) for the elements of Section 1983 conspiracy).

Contrary to Fleming and Rice's arguments in their briefs and before the Court, there are fact issues to resolve on whether they engaged in a Section 1983 conspiracy against Hamilton. Summary judgment is denied.

28

### 5.    Malicious Prosecution

Fleming and Rice argue that they are entitled to summary judgment on Hamilton's malicious prosecution claim. ECF No. 44, PageID.1388-89. Fleming and Rice challenge whether Hamilton can prove two elements of such a claim: whether there was probable cause for the criminal prosecution, and whether the criminal proceeding resolved in the plaintiff's favor. *Id.*

Fleming and Rice rely on the following evidence to show that there was probable cause to prosecute Hamilton: (a) Hamilton had past negative experiences with Ms. Bias, (b) Hamilton cashed a check from Ms. Bias with an allegedly forged signature sometime after Ms. Bias died, (c) a friend of Ms. Bias spoke of how Ms. Bias was terrified of Hamilton, (d) Thompson told the DPD (although he refused to testify) that Hamilton confessed to the murder, and (e) Cowan testified that Hamilton confessed to the murder and that Thompson, Hamilton's "little friend," confirmed that Hamilton was "crazy," and effectively confirmed that Hamilton committed the murder. ECF No. 44 at PageID.1389, PageID.1353, PageID.1377; ECF No. 44-10, PageID.1939; ECF No. 50, PageID.2324.

There are genuine questions of material fact for the jury to resolve on this element of Hamilton's malicious prosecution claim. If Cowan's testimony was false, whether the remaining evidence would have been enough to find probable cause to charge Hamilton is unclear. A jury might conclude that it was sufficient. But in the absence of the confession,

29

the other evidence is also consistent with innocence. Hamilton could have had a bad relationship with Ms. Bias, or even have forged a check from her, without killing her. And Thompson refused to repeat his statement to the police. Without Cowan's testimony, it is more difficult to conclude there was probable cause to charge Hamilton. At the summary judgment stage, the Court must interpret the facts in the light most favorable to the nonmovant, and here, a jury could find that absent the Cowan testimony, there was insufficient probable cause to charge Hamilton for the murder of Ms. Bias.

Fleming and Rice also argue that Hamilton cannot show malicious prosecution because "the criminal proceeding was not terminated in his favor on the merits. Rather, [Defendants claim, Hamilton] was granted a reprieve by the Wayne County Prosecutor's Office through process that did not involve a factfinder." ECF No. 44, PageID.1389. Fleming and Rice provide no authority at all for the proposition that a vacated sentence does not allow for a malicious prosecution claim unless the conviction was vacated due to a decision by a factfinder. *See id.*

Hamilton's Response provides authority for the opposite proposition: A malicious prosecution plaintiff need not "show that his prosecution ended with an affirmative indication of innocence . . . .", and only must "show that the criminal prosecution ended without a conviction." *Thompson v. Clark*, 596 U.S. 36, 49 (2022). In *Thompson*, the Supreme Court reversed the decision by a lower court that had dismissed

30

a plaintiff's claim of malicious prosecution on the ground that the charges had merely been dismissed by the prosecutor and trial court rather than after a verdict of acquittal. *See id.*, 596 U.S. at 41.  The same kind of dismissal happened to Hamilton here, and it may support a claim of malicious prosecution. Summary judgment is denied.

### 6.   Section 1988

Fleming and Rice move for summary judgment and dismissal of any claim by Hamilton under 42 U.S.C. § 1988. ECF No. 44, PageID.1390. But as Hamilton notes, that statute is a provision allowing Hamilton to recover attorney's fees should he prevail in this case. *See* Compl. at 42 (seeking such relief); *see also Roberts v. Neace*, 65 F.4th 280, 284 (6th Cir. 2023) ("In the American legal system, winners and losers usually pay their own legal fees. . . . An exception exists for civil rights cases and other actions that vindicate rights under federal law. In a § 1983 action, courts may grant "a reasonable attorney's fee" to "the prevailing party." 42 U.S.C. § 1988(b)."). There is no 1988 "claim" to dismiss, and Fleming and Rice are not entitled to summary judgment.

### 7.   Qualified Immunity

Fleming and Rice argue that they are entitled to qualified immunity, and that Hamilton's claims against them must therefore be dismissed. ECF No. 44, PageID.1369. Their arguments derive from their position, described above, that even if they falsely generated Cowan's testimony, Hamilton suffered no harm under the Constitution: "Plaintiff

31

and his various defense counsel were fully aware of any issues there might have been with Cowan's testimony at the pertinent times." *Id.* at PageID.1371-72.

"Qualified immunity shields government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Est. of Hill by Hill v. Miracle*, 853 F.3d 306, 312 (6th Cir. 2017) (internal quotations removed, *quoting Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). Prejudicially withholding evidence, fabricating evidence, and malicious prosecution violate clearly established constitutional rights. *Jackson v. City of Cleveland*, 925 F.3d 793, 823-27 (6th Cir. 2019). That conduct does not support a qualified immunity defense. *Id.*, *see also Gregory v. City of Louisville*, 444 F.3d 725, 737 (6th Cir. 2006) (fabricating evidence violates constitutional rights when a reasonable likelihood exists that the false evidence would have affected the jury's decision).

If Hamilton suffered no constitutional harm, qualified immunity would protect Fleming and Rice. As stated, however, the record clearly presents a genuine issue of fact on the question of whether Defendants' alleged conduct of fabricating evidence, prejudicially withholding information, and maliciously prosecuting Hamilton caused him to be wrongly convicted—an obvious constitutional harm. While Hamilton's defense attorneys may have been aware that there were many

32

confessions coming out of the 9th floor of DPD headquarters, they did not *know* that, as alleged, Cowan's testimony against Hamilton was falsely generated, nor that Fleming and Rice were involved in intentionally generating it. Defendants are not entitled to qualified immunity because on the available record a reasonable jury could find that Defendants' conduct denied Hamilton's right to a fair trial, and that most obviously would be a violation of his clearly established constitutional rights. Their motion for summary judgment on this ground is denied.

## IV. CONCLUSION

For the reasons stated, Carter's Motion for Summary Judgment is **GRANTED**. Therefore, Hamilton's claims against Carter will be **DISMISSED WITH PREJUDICE**. However, Fleming and Rice's Motion for Summary Judgment is **DENIED**. Hamilton's case against them will proceed.

**SO ORDERED.**

Dated: March 31, 2025          /s/Terrence G. Berg
                               HON. TERRENCE G. BERG
                               UNITED STATES DISTRICT JUDGE